IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEONARD WADDELL, #444570 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. DKC-15-3517 |
| MRDCC | * | |
| MTC HOSPITAL UNIT | | |
| THE FACILITIES HOSPITAL AT MTC | * | |
| MARYLAND DEPARTMENT OF | | |
|   CORRECTIONS | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

On November 18, 2015, the court received for filing Leonard Waddell's ("Waddell"), self-represented 42 U.S.C. § 1983 civil rights action. The complaint seeks compensatory damages due to the "negligence" of officials and "financial support for my continuing medical treatment" from the Maryland Reception, Diagnostic and Classification Center ("MRDCC"), the Maryland Department of Corrections ("DOC"), The Metropolitan Transition Center ("MTC") Hospital Unit, and the Facilities Hospital at MTC. Waddell has filed a Motion and Supplemental Motions for Judgment on the Pleadings. ECF Nos. 11 & 20. Defendants MRDCC and DOC have filed a Motion to Dismiss[1] (ECF No. 12), to which Waddell has filed oppositions. ECF Nos. 19 & 21. Wexford Health Sources, Inc., the private health care and utilization contractor for the Maryland Department of Public Safety and Correctional Services has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on behalf of the named

---

[1] A Motion to Dismiss filed by the DOC and MRDCC for Waddell's failure to file current address was withdrawn. ECF Nos. 13, 17, & 18.

Defendants MTC Hospital Unit and The Facilities Hospital at MTC ("Medical Defendants") (ECF No. 24), as well as a legal memorandum (ECF Nos. 24-3)[2], a Motion to Seal (ECF No. 25) and a physician Affidavit and medical record exhibits. ECF No. 24-5; ECF No. 25-2. Waddell has filed a Motion for Summary Judgment or, in the Alternative, Motion for Judgment on the Pleadings.[3] ECF No. 28. Waddell has also filed an opposition to the Medical Defendants' dispositive Motion. ECF No. 36. The Medical Defendants have filed oppositions to Waddell's Motions for Summary Judgment and to Consolidate or Amend Complaints. ECF Nos. 32 & 33.

The matter is ready for disposition; no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons that follow, Defendants' dispositive Motions (ECF No. 12 & 24) ARE GRANTED.[4] Waddell's Motions for Judgment on the Pleadings and Motion for Summary Judgment ARE DENIED.

## I. Background

Waddell states that at or around 5:30 p.m. on November 6, 2015, while housed on the MRDCC segregation tier, he was stabbed and cut in the face by another inmate, who was able to remove his three-piece restraints. He claims that he was transported to MTC Hospital without treatment until he lost consciousness, resulting in being taken to the Emergency Room at Bon Secours Hospital ("BSH"). There he received staples to his head at or around 2:30 a.m. on November 7, 2015. Waddell maintains that upon his November 7, 2015 discharge, he was taken

---

[2] All exhibits are referenced by their electronic filing number.

[3] Waddell has also filed a Motion to Settle and Motions to Consolidate and Amend Complaints. ECF Nos. 30, 31, & 37.

[4] The Medical Defendants move to seal relevant medical records attached to and supportive of their dispositive motion. ECF No. 25. The Motion shall be granted and the Clerk shall place all documents found in the exhibit at ECF No. 25-2 under seal.

back to MTC, where he was housed in a condemned cell, which "was not fit for patients." He claims he remained so housed until 11:30 p.m. on November 9, 2015. ECF No. 1, pp. 3-5.

## II. Standard of Review

### Motion to Dismiss Filed by DOC and MRDCC

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). Because Waddell is self-represented, his submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). In evaluating the complaint, the court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v.*

*Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Filed by Defendants MTC Hospital Unit and the Facilities Hospital at MTC (Medical Defendants)

The Medical Defendants' motions are styled as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).[5]  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

---

[5] In his Motions for Judgment on the Pleadings, Waddell alleges that personnel failed to protect him from the assault on November 6, 2015.  He asserts that he did not receive timely care for his head wound and concussion. ECF No. 11.  In addition, Waddell claims that a statement he submitted shows that "officers placed themselves in danger due to their negligence resulting in my being assaulted and injured" by his cellmate. ECF No. 20.  He further alleges that when returned to MTC he was placed in a dirty cell which was without sprinklers, was out of sight of observation, had holes in the brick walls, and had writings of Islamic content on the door. He raises claims of medical malpractice and alleges that he attempted to file administrative remedies and "in compliance with the Tort Act I presented this matter to the United States District Court." *Id*.

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167. The court is more than satisfied that given the volume of exhibits presented here, it has ample information with which to address the motions as filed for summary judgment.

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

### III. Discussion

State Defendants DOC and MRDCC maintain that they are immune from liability under the Eleventh Amendment and that they are not a "person" within the meaning of 42 U.S.C. § 1983. ECF No. 12. They further assert that Waddell has failed to meet the minimum pleading requirements set out in *Twombly* and *Iqbal* and, insofar as he has raised a claim of negligence, Waddell had failed to comply with the notice provisions of the Maryland Tort Claims Act. *Id*.

In his oppositions, Waddell submits twenty-six pages of his inmate complaints, grievance remedies and responses, and portions of his medical records. ECF Nos. 19 & 21.

Medical Defendants MTC Hospital Unit and the Facilities Hospital at MTC assert in their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, that during the relevant time period in question, Waddell was housed at MRDCC. At 7:12 p.m. on the evening of November 6, 2015, he was seen by Registered Nurse Practitioner Grace Emasealu for a head laceration. Emasealu noted that Waddell had been stabbed with a piece of metal. ECF No. 25-2, pp. 1-2. He complained of pain and feeling lightheaded, but denied any visual changes. No

rhinorrhea or otorrhea (nasal or ear discharge) was observed.  An objective 3 cm. laceration was observed in Waddell's occipital[7] area with a small amount of bloody drainage.  A small abrasion was also noted on Waddell's right cheek.  No memory or sensory loss was observed and Waddell showed no motor weakness or gait disturbance.  Emasealu observed that Waddell would need sutures and the on-call provider was contacted and recommended that Waddell be transferred to the infirmary for sutures.  Waddell was provided a 650 mg. dose of acetaminophen.[8]  He was found to be in stable condition.  ECF No. 25-2, pp. 1-4.

At 10:47 p.m. on November 6, 2015, Waddell was admitted to the infirmary due to his occipital stab wound and seen by the Doctor Jocelyn el-Sayed.  *Id*., pp. 6-7.  His vital signs were normal.  He complained of lightheadedness and a severe headache and it was noted that the laceration was still bleeding.  Dr. El-Sayed found that given Waddell's lightheadedness, as well as his severe headache with gaping wound, he should be sent to the emergency room at BSH for further evaluation and patient management.  *Id*.  On November 7, 2015 at 1:15 a.m. his head laceration was cleaned and covered with sterile gauze.  Approximately twenty minutes later, at 1:37 a.m., Waddell's roommate "called, that [patient]fell out."  Waddell was observed on the floor.  *Id*., p. 8.  Blood was also seen on the floor.  Waddell's wound dressing was off.  No active bleeding was noted.  Waddell indicated that he no longer wished to be in the infirmary.  He refused to have his vital signs taken or to have his head wound cleaned and covered.  An ambulance was called at 2:05 a.m. and arrived at 2:45 a.m.  The ambulance departed for BSH at 2:50 a.m.  *Id*.

---

[7]   The occipital area is at the rear of the skull where the skull joins the neck.  *See* http://www.healthline.com/human-body-maps/occipital-bone.

[8]   Acetaminophen is a pain reliever found in over-the-counter and prescription medications.  *See* http://www.healthline.com/health/acetaminophen-overdose.

At BSH, Waddell was diagnosed with a scalp laceration and concussion, without the loss of consciousness. *Id.*, pp. 33-34. The laceration was secured with four staples. A CT scan was conducted. No abnormalities were found. Waddell was advised to have the staples removed in ten days. ECF No. 25-2, pp. 33-34. He was returned to the prison infirmary from BSH on November 7, 2015, at 10:35 a.m., when it was noted that he was medicated and sleeping. *Id.*, pp. 11-12. Approximately two hours later at 12:15 p.m., Waddell voiced no complaints. It was observed that his laceration had been repaired with staples and a wound dressing had been applied. *Id.*, pp. 9-10. During infirmary rounds over the following 48-hour period it was noted that Waddell had no symptoms of acute distress, shortness of breath, and no bleeding from his wound. *Id.*, pp. 13-21.

Waddell continued to be housed in the infirmary until November 9, 2015, when he was discharged to the MRDCC general population. At the time of his infirmary discharge he voiced no complaints and expressed his wish to return to general population. *Id.*, p. 22.

Despite physician's orders to have the staples removed in ten days, Waddell refused to allow healthcare staff remove the staples, insisting that he wanted his attorney to see the wound before the staples were removed. He further insisted that the staples be removed by staff at BSH. Although he was warned that the wound could become infected if he refused to have the staples removed, Waddell continued to refuse to have his staples removed by prison medical personnel. *Id.*, pp. 23-26. No pus, drainage or other signs of infection were noted at the site during this time period. Waddell signed a number of release of responsibility forms regarding his refusal to have the staples removed. *Id.*, pp. 36-42. On January 2, 2016, Waddell permitted medical staff to remove his staples, which were removed without difficulty. No abnormalities or infection were noted. *Id.*, p. 27.

In his Motion for Summary Judgment, Waddell claims that he was attacked while in the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS") and there was a delay in his receipt of proper treatment. ECF No. 28. He provides a chronological history of his care over a 24-hour period and maintains that it took ten hours for him to receive care for the stab wound to his head. ECF No. 28.

In his opposition, Waddell claims that his wound was left open for several hours and appears to take issue with the Medical Defendants' characterization of "his fall out of bed," stating it should be interpreted as meaning he had lost consciousness and if not for his roommate contacting personnel, he would have continued to lie on the floor, in blood, with no dressing on his head. ECF No. 36. Moreover, he contends that the cell he was placed in for observation was not suitable.[9] *Id.*

The Medical Defendants have filed an opposition to Waddell's Motion for Summary Judgment, arguing that Waddell merely regurgitated the claims raised in his complaint and the objective medical records reflect that Waddell received prompt and appropriate care for his head wound. ECF No. 32.

## IV. Analysis

It is argued that the MRDCC is not a person within the meaning of 42 U.S.C. § 1983 and the DOC has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. The court concurs. Defendant DOC is a state agency operating as a division of the

---

[9] On August 5, 2016, Waddell's motion for appointment of counsel was denied. His motion for extension of time to respond to the medical defendants' opposition was granted to August 29, 2016. ECF No. 40. Waddell's additional motions for appointment of counsel were denied on August 9, 2016. ECF No. 43. On September 8, 2016, Waddell filed a Motion for Reconsideration of the court's denial of his Motions for Appointment of Counsel. ECF No. 44. Waddell's Motion for Reconsideration shall be denied for those reasons previously articulated by the court.

Maryland DPSCS. *See* Md. Code. Ann., Corr. Servs., Art., §§ 1-101(g) and 3-201. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, the complaint against DOC is subject to dismissal.

Further, MRDCC is a free-standing prison facility. As a threshold matter, the court notes that MRDCC is not a "person" subject to suit under 42 U.S.C. § 1983. A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301(E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). The § 1983 claim against MRDCC is subject to dismissal.

Waddell's claims against the Medical Defendants are likewise subject to dismissal, even if he had named proper individuals. The record presented establishes that medical providers did not fail to provide him necessary care for the stab wound to the occipital area of his head. He was examined by health care staff and his condition was assessed, he received pain medication and a wound dressing, and he was transported to a local hospital, where he received sutures and a CT scan. Although Waddell did not receive care as expeditiously as he would have liked, there is no showing that his condition was aggravated by the delay. The record evidence indicates that

Waddell's needs were addressed. A constitutional violation cannot be made given the facts of this case.

### V.  Motions to Consolidate and to Amend

The court observes that Waddell has filed two other civil rights complaints. In *Waddell v. Maryland Pre-Trial Division (BCDC), et al.*, Civil Action No. DKC-15-3286 (D. Md.), he accuses several Baltimore City Detention Center officers of threatening and assaulting him in June and July of 2015. In *Waddell v. Osborne, et al.*, DKC-16-139 (D. Md.), he raises a failure-to-protect claim against several MRDCC officers, claiming that during a "depopulation" move, he was assaulted by 15 other prisoners on August 22, 2015, including Tavon Lee. He claims that the officers were placed on notice of his difficulty with Lee, yet he was placed in a cell with him at MRDCC and sustained an injury to his head in November, 2015, the treatment of which is the subject of this case.

In his first Motion to Consolidate or Amend his Complaints, Waddell seeks to consolidate all three complaints and to amend them to include the names of additional Defendants and additional allegations surrounding a vehicle collision that occurred on January 7, 2016.[10] ECF No. 31. In his second Motion to Consolidate or Amend, Waddell seeks to add the names of additional Defendants regarding his November, 2015 assault and the denial of medical care. ECF No. 37. The first Motion was filed in all three of Waddell's cases, while the second Motion was filed in the instant matter and *Waddell v. Osborne, et al.*, DKC-16-139 (D. Md.). In light of this court's findings regarding Waddell's medical care and the named Defendants liability under § 1983, Waddell's Motions to Consolidate all three cases shall be denied. For

---

[10] Defendants DOC and MRDCC oppose Waddell's Motion to Consolidate and Amend his Complaint. ECF No. 33. They argue that Waddell has not received permission to amend his Complaint as required under Fed. R. Civ. P. 15(a) and consolidation of the cases is inappropriate in light of Waddell's request for damages and Defendants' Eleventh Amendment immunity.

similar reasons, his Motions to Amend shall be denied as to this case, but shall be independently considered in his other two cases.

A Separate Order shall be entered reflecting the Opinion set out herein.


Date:   September 9, 2016             _____/s/_____
                                      DEBORAH K. CHASANOW
                                      United States District Judge